IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| WARREN COUNTY, VIRGINIA,<br>a political subdivision of the<br>Commonwealth of Virginia,<br>220 North Commerce Avenue<br>Front Royal, Virginia 22630,<br><br>Plaintiff,<br><br>v.<br><br>JOHN ASHCROFT, Attorney General of<br>the United States of America,<br>RALPH F. BOYD, JR.,<br>Assistant Attorney General,<br>Civil Rights Division, United States<br>Department of Justice, Washington, DC,<br><br>Defendants. | ) | Civil Action No.<br><br>Three-Judge Court Requested |

COMPLAINT

Warren County alleges that:

1. This is an action brought for declaratory relief pursuant to Section 4 of the Voting Rights Act of 1965, as amended, 42 U.S.C. §1973b (hereinafter "Section 4"). This Court has jurisdiction over this action pursuant to 28 U.S.C. §1343(a)(4), 28 U.S.C. §2201, 42 U.S.C. §1973b, and 42 U.S.C. §1973l(b).

2. Plaintiff Warren County ("the County") is a political subdivision of the Commonwealth of Virginia. Warren County, Virginia, is located in the Shenandoah Valley, approximately 50 miles from Washington, DC.

3. Located within Warren County is the Town of Front Royal, Virginia. County residents of Warren County who reside within Front Royal are eligible to vote in town elections, and Front Royal residents are eligible to vote in Warren County elections.

4. The Warren County Board of Supervisors is the governing body that formulates policies for the administration of government in Warren County. It is comprised of five members elected from single-member districts to serve four-year terms. Terms of office are staggered such that two supervisors are up for election in one year and then three supervisors are up for election two years later. The County Board of Supervisors appoints a County Administrator to serve as the County's chief administrative officer.

5. The five Board of Supervisors districts contain a total of 12 polling locations, located conveniently to voters across the County.

6. There are two governmental units operating within Warren County. One of these is the town government in Front Royal, the county seat. Front Royal is governed by a seven-member town council, a mayor and six council members. Elections are conducted at-large, and a plurality win system is in effect. Elections are held every two years and terms of office for town council members are staggered such that three members are elected every two years. The other governmental unit operating within Warren County is the Warren County School Board ("School Board"). Since 1995, the School Board has been an elected body, with members elected from the same districts as the County Board of Supervisors. Terms of office for the School Board are staggered in the same manner as the positions for the Board of Supervisors.

7. According to the 2000 census, Warren County, Virginia has a total population of 31,584. Of this number, 1526 persons (or 4.8%) are black and 494 (or 1.6%) are Hispanic. The voting age population of the County, according to the 2000 census, is 23,501. Of this number, 1092 (4.6%) are black and 343 (1.5%) are Hispanic. The Town of Front Royal, according to the 2000 census, has a total population of 13,589. Of this number 1,180 (8.7%) are black and 290 (2.1%) are Hispanic. The voting age population of Front Royal is 10,102. Of this number, 843 (8.3%) are black and 191 (1.9%) are Hispanic.

8. Like other jurisdictions in the Commonwealth of Virginia, Warren County does not collect or maintain voter registration data by race. As of today, there are 18,250 registered voters in Warren County.

9. The number of registered voters in the County has risen over the last couple of decades. In 1979, for example, there were only 7834 registered voters in the County. By 1983, the number of registered voters had grown to 8335. By 1990, the number had risen to 9368. The number of registered voters in the County has grown even more dramatically over the last decade. From 1990 to 1999, the number of registered voters in the County grew by 71%, from 9368 in 1990 to 16,012 in 1999.

10. Voter turnout in elections varies according to the offices up for election. In the three Presidential elections of 1988, 1992 and 1996, 80%, 87%, and 75% of the County's registered voters turnout to vote, respectively. In the November 2000 Presidential election, 11,398 persons turned out to vote, which was 66% of the County's registered voters at that time. In the General

Election for Governor held in November 2001, 8,025 persons, or 45.5% of the County's registered voters, turned out to vote. Voter turnout for the Warren County Board of Supervisors elections in the last two cycles has been 43.9%, and 45.5%, respectively.

11. As a political subdivision of the Commonwealth of Virginia, plaintiff Warren County has been subject to certain special remedial provisions of the Voting Rights Act, including the provisions of Section 5 of the Act, 42 U.S.C. §1973c. Under Section 5 of the Act, known as the "preclearance" provisions, covered jurisdictions, including Warren County, are required to seek and obtain preclearance from either this Court or from the United States Attorney General of any change affecting voting, and such preclearance must be obtained prior to implementation.

12. Since its inception in 1965, the Voting Rights Act has allowed the States and political subdivisions, which are subject to these special provisions of the Act, to exempt themselves from coverage under the Act's special remedial provisions, if they can satisfy standards established in the Voting Rights Act.

13. In 1982, Congress made changes in the exemption standards of the Act. As amended in 1982, Section 4 of the Voting Rights Act provides that States and political subdivisions covered under the special provisions of the Act are entitled to a declaratory judgment in this Court granting an exemption from the Act's special remedial provisions if, during the ten years preceding the filing of the action:

> A) no test or device has been used either for the purpose or with the effect of denying or abridging the right to vote on account of race, color, or membership in a language minority group, within the State or political subdivision seeking a declaratory judgment;

> B) no final judgment has been entered by any court determining that the political subdivision has denied or abridged the right to vote on account of race, color, or membership in a language minority group;
> C) no Federal examiners have been assigned to the political subdivision;
> D) all governmental units within the political subdivision have complied with the preclearance provisions of Section 5 of the Voting Rights Act, 42 U.S.C. 1973c; and
> E) the Attorney General has not interposed any objection to any proposed voting change within the political subdivision and no declaratory judgment has been denied with regard to such a change by this Court under Section 5.

14. As amended in 1982, Section 4 of the Act also requires States and political subdivisions seeking an exemption from the Act's special provisions to show that, during the pendency of the declaratory judgment action seeking such exemption:

> A) Any voting procedure or method of election within the state or political subdivision exists which inhibits or dilutes equal access to the electoral process has been eliminated;
> B) Constructive efforts have been made by the political subdivision to eliminate any intimidation or harassment of persons exercising rights under the Voting Rights Act; and
> C) Expanded opportunities for convenient registration and voting exists within the State or political subdivision.

15. As described in each of the paragraphs set forth below, Warren County has fully complied with the provisions of Section 4 of the Act as set forth in paragraphs 13 and 14, *supra*.

16. Over the years, Warren County has made numerous submissions to the Department of Justice seeking preclearance of voting changes under Section 5 of the Voting Rights Act. Since 1983, for example, the County has made a timely submission of over 125 voting changes to the Department of Justice for Section 5 preclearance. The defendant Attorney General has approved each and every voting change that has been submitted by the County for preclearance under the

Voting Rights Act. Since passage of the Voting Rights Act in 1965, not a single objection has been interposed by the Department of Justice to any voting change in Warren County. In approving each and every change, the defendants have concluded that the voting changes submitted were free of a racially discriminatory purpose or a racially discriminatory effect. Many of the voting changes made over the years in Warren County and submitted for Section 5 preclearance actually expanded the opportunities for County residents to become registered voters and to cast ballots.

17. Voter registration opportunities in the County are readily and equally available to all citizens. The voter registration office for the County is located in downtown Front Royal, a central and convenient location for County residents. The voter registration office is office is open from 9 a.m. to 12:30 p.m., and from 1:30 pm to 5 p.m., Monday through Friday.

18. Voters in Warren County may also register by mail, and voter registration applications are available at locations throughout the County.

19. The opportunity to become a registered voter in Warren County is also available under the National Voter Registration Act (the "NVRA") at DMV offices and public assistance agencies in Warren County. While in past years most voters became registered at the County's voter registration office, the implementation of the NVRA in Virginia over the last decade has changed the origin of the great majority of registration applications. Today, many of the County's new registrants register through the DMV and by mail, and the opportunities for persons to register to vote has been made more convenient and available as a result of

implementation of the NVRA.



20. Warren County also has a three-member Electoral Board, appointed pursuant to Virginia state law, and the Electoral Board nominates a roster of persons each February to work as poll workers for a one-year term. Recommendations of persons to be appointed as poll workers originate with the chairs of the local Democratic and Republican parties. Not a single person recommended by a political party chair to serve as a poll official has ever been rejected by the Electoral Board.

21. Because the County has found it difficult over the years to find enough persons willing to serve as poll officials, the Warren County General Registrar has actively recruited persons to work at the polls and has even distributed brochures seeking qualified persons to serve as poll officials. In recent years, the State's voter registration applications (including the one used at DMV and public assistance agencies in Warren County) have included a special section soliciting persons to serve as poll officials. These applications are publicly available at the Registrar's office, County offices, and the Commissioner of Revenue and Treasurer's offices. Not a single eligible Warren County resident who has expressed an interest in becoming an election official has ever been denied the opportunity to do so. Although the number and percentage of minority persons in Warren County is quite small, minority citizens have served as poll officials. Today, for example, there are 65 persons who work the polls. On average, there have been between 55 and 65 poll workers in Warren County in recent years. From 1993 to the present, the number of black residents serving as poll officials has met or exceeded the black

voting age population of the County.



22. Although the number and percentage of minority citizens in Warren County is quite small, minority citizens have nonetheless played an active role in the political process within the County. For example, the Warren County Board of Supervisors has had one black member (Mr. Robert Kellam) since 1995, and Mr. Kellam was selected to serve as Chairperson of the Board of Supervisors in 1999. Mr. Kellam was the first black candidate to seek elective office in Warren County, having been elected in 1995 and re-elected in 1999. In addition, black candidates for elective office have also been successful at the town level. In Front Royal, for example, a black candidate (Mr. George Banks) ran for mayor in 1996 and was elected. In 1998, Mr. Banks was re-elected without opposition.

23. No person in Warren County has been denied the right to vote on account of race, color, or membership in language group since at least the time that the Voting Rights Act was enacted in 1965.

24. No "test or device" as defined in the Voting Rights Act (42 U.S.C. §1973b(c)) has been used in Warren County as a prerequisite to either registering or voting for at least the preceding ten years.

25. Warren County has never been the subject of any lawsuit in which it was alleged that a person (or persons) was being denied the right to vote on account of race, color, or membership in a language minority group.

26. No voting practices or procedures have been abandoned by the County or challenged on the grounds that such practices or procedures would have either the purpose or the effect of denying the right to vote on account of race, color, or membership in a language minority group.



27. Warren County has not employed any voting procedures or methods of election that inhibit or dilute equal access to the electoral process by minority voters in the County. Minority voters in Warren County are not being denied an equal opportunity to elect candidates of their choice to the County Board of Supervisors, to the County School Board, or the Front Royal town council.

28. Federal examiners have never been appointed or assigned to Warren County under Section 3 of the Voting Rights Act, 42 U.S.C. §1973a.

29. There are no known incidents in Warren County where any person exercising his or her right to vote has been intimidated or harassed at the polls (or while attempting to register to vote).

30. The allegations set forth in paragraphs 16 through 29, above, if established, entitle Warren County to a declaratory judgment under Section 4 of the Voting Rights Act, 42 U.S.C. §1973b, exempting the County and all the governmental units within the County from the special remedial provisions of the Voting Rights Act.

31. Pursuant to 42 U.S. C. §1973b, Warren County has "publicize[d] the intended commencement …of [this] action in the media serving [the County] and in the appropriate United States post offices." The County published a legal Notice that it intended to commence

this bailout action in the Northern Virginia Daily, a daily newspaper of general circulation in and around Warren County, in June 2000. In addition, the County posted copies of the Notice in post offices in Warren County and at eight other public locations, including the County Courthouse



and Office of Voter Registration. The County also held a public hearing on the proposed bailout in June 2000, and no one appeared at the hearing in opposition. The County also intends to publish a Notice that it has commenced this action and that it intends to file a proposed settlement of this action, if Defendants consent to entry of the requested declaratory judgment action sought herein.

WHEREFORE, plaintiff Warren County respectfully prays that this Court:

A. Convene a three-judge court, pursuant to 28 U.S.C.§2284 and 42 U.S.C. §1973b, to hear the claims raised in plaintiff's complaint;

B. Enter a declaratory judgment that Warren County is entitled to a bailout from the special remedial provisions of the Voting Rights Act; and

C. Grant such other relief as may be necessary and proper as the needs of justice may require.

**For Plaintiff Warren County:**

DOUGLAS W. NAPIER
Warren County Attorney
220 North Commerce Avenue, Suite 100
Front Royal, VA 22630
(540) 636-6674 (O)

______________________________
J. GERALD HEBERT
Attorney at Law
5019 Waple Lane
Alexandria, Va. 22304
(703) 567-5873 (O)
(703) 567-5876 (fax)
DC Bar No. 447676